# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SEAN A. ANTHONY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-01504-MTS |
| | ) | |
| QUIKTRIP CORPORATION d/b/a | ) | |
| QUIKTRIP #601, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant QuikTrip Corporation's Motion for Summary Judgment. Doc. [26]. For the reasons that follow, the Court will grant Defendant's Motion and enter Judgment in its favor.

## I.    Background

In 2023, Plaintiff Sean A. Anthony brought this premises-liability action against Defendant, alleging that he was injured while using a fuel pump at Defendant's gas station on May 28, 2021. Doc. [1-1]. Plaintiff alleged that when he attempted to pump gas into his vehicle, the dispensing hose unexpectedly detached from Defendant's fuel pump and sprayed him with gasoline, which caused him to sustain injuries. *Id.* at 2–3. He asserted that Defendant knew or should have known the subject hose was a dangerous condition on the premises but negligently failed to repair it or otherwise make it reasonably safe for business invitees. *Id.*

All of the fuel pumps at the subject gas station are equipped with "hanging hardware," which includes a nozzle, a swivel, a hose, and a breakaway. Doc. [29] ¶ 4. A breakaway is a safety device on the hose that is activated when a customer fails to remove the nozzle from

their vehicle before driving away from the pump.  *Id.* ¶ 5.  When a customer drives away with the nozzle still in the vehicle, the breakaway device uses a mechanical hydraulic pressure system to automatically disconnect the hose from the pump and stop the flow of gasoline from the pump to the nozzle.  *Id.* ¶ 7.  As a result, the customer will drive away with only the hose and nozzle, rather than pulling down the entire pump.  *Id.* ¶ 8.  There is no sensor or alarm on the pump or breakaway device that automatically notifies Defendant or its employees that a customer has driven away with a nozzle and hose still attached to the vehicle.  *Id.* ¶ 9.  Instead, Defendant is notified that a hose has been disconnected only if an employee is outside and observes a disconnected hose on the ground or a customer notifies an employee that a hose has been disconnected.  Doc. [28-1] at 6.  In the event that Defendant is notified that a hose has been disconnected from a pump, Defendant's practice is to take the pump out of service, place an out-of-service bag on the handle of the nozzle, leave the hose on the ground, and send a work order to facility support for a repair.  Doc. [29] ¶¶ 10, A.  Defendant's store managers are instructed not to reattach breakaway devices themselves and, instead, wait for a technician from facility support to arrive and properly reconnect the hose.  *Id.* ¶ 10; Doc. [28-1] at 7 ("The store manager should not be reattaching the breakaway themselves. . . .  [T]hey are not expected to mess with any mechanical or . . . electronic[] devices that they are not certified to repair.").  Once or twice per week per gas station, Defendant's field supervisor is called to reattach a hose that has been disconnected by a customer driving away with a nozzle.  Doc. [31] ¶ E.

A surveillance camera at the subject gas station recorded the May 28, 2021, incident and the events leading up to it, but the gas station's video cameras are not monitored in real time.  Doc. [29] ¶¶ 18, 24, D.  Prior to the incident, an unidentified customer parked at the

subject gas pump and dispensed gasoline into his vehicle.  *Id.* ¶ 11.  At 11:27 a.m., the unidentified customer drove away from the pump with the nozzle still in the gas tank, causing the breakaway to activate and disconnect the hose from the pump.  *Id.* ¶ 12.  After dragging the hose on the ground for a short distance, the unidentified customer exited his vehicle and carried the hose back to the subject pump.  *Id.* ¶ 13.  The unidentified customer attempted to reconnect the hose to the pump himself without notifying Defendant or its employees.  *Id.* ¶ 14. The unidentified customer reconnected the hose to the pump in such a way that it visually appeared to be reconnected to the pump, but the customer did not properly reconnect the breakaway device in a way that would allow the pump to function normally.  *Id.* ¶ 15.  The unidentified customer then drove away from the premises without notifying Defendant or its employees that the hose had been disconnected or that he had attempted to reconnect the hose himself.  *Id.* ¶ 16.

At 11:34, a second unidentified customer parked next to the subject pump and attempted to use it, but when the pump did not work, the customer pulled his car forward to the next pump, which he successfully used.  Doc. [31] ¶¶ B, C. The second unidentified customer left the gas station at 11:39 a.m.  *Id.* ¶ C.

At 11:49 a.m., Plaintiff arrived at the gas station and parked next to the subject pump. Doc. [29] at ¶ 18.  During his deposition, Plaintiff stated that he did not notice anything unusual about the pump and that everything looked "normal."  *Id.* ¶ 17; Doc. [28-3] at 5.  He placed the nozzle in his vehicle and squeezed the handle, which caused the pump to repressurize, the residual fuel left inside of the hose to flow, and the breakaway device to disconnect the hose from the pump.  Doc. [29] ¶¶ 19-20.  The breakaway reactivated at that time because the unidentified customer had not properly reconnected the hose to the pump.  *Id.* ¶ 21.  When the

hose disconnected from the pump, approximately one tenth of a gallon of gasoline sprayed out from the point where the breakaway disconnected. *Id.* ¶ 22. Some of the gasoline sprayed Plaintiff and allegedly caused him to sustain injuries. *Id.* ¶ 23.

Plaintiff admits that during discovery, he did not identify any witness who claimed to have provided notice to Defendant that the unidentified customer had driven away with the hose and attempted to reconnect the hose himself. *Id.* ¶ 26. He also did not endorse any expert witness to opine on an act or omission of Defendant that caused or contributed to the subject incident or any defect with the subject gas pump or its components. *Id.* ¶¶ 26, 27.

Defendant has moved for summary judgment, arguing that Plaintiff has failed to produce evidence that it had actual or constructive notice that the unidentified customer disconnected the hose and then improperly reconnected the breakaway device. Doc. [26]. Defendant contends that Plaintiff cannot establish that it had constructive notice of the dangerous condition because the undisputed facts show that there was no visual indication that the hose was improperly connected to the subject pump, there was no alarm or sensor on the subject pump or breakaway device to notify Defendant's employees when the hose has become disconnected from the pump, and Defendant is notified that a hose has been disconnected only if an employee observes a disconnected hose or a customer notifies an employee that a hose has been disconnected.[1] Doc. [27] at 6–9. Because Plaintiff has not shown that Defendant or its employees had constructive notice or a reasonable opportunity to discover the condition of

---

[1] Defendant also argues that Plaintiff has not produced evidence showing that it violated a regulation or industry standard, that either the fuel pump or hose was defective, or that Defendant's alleged conduct was the proximate cause of Plaintiff's injuries. Doc. [27] at 9–12. Because the Court concludes that Plaintiff has not raised a genuine issue of material fact as to whether Defendant had constructive notice, the Court need not address Defendant's remaining arguments.

the hose prior to Plaintiff's incident, Defendant asserts that summary judgment should be entered in its favor. *Id.* at 8.

Plaintiff concedes that Defendant did not have actual notice of the condition of the hose, but he argues that Defendant should have known about the dangerous condition because technicians in the area are regularly called to reattach disconnected hoses. Doc. [30] at 3. Noting that Defendant has placed video cameras around the subject gas station but does not require its employees to monitor the videos, Plaintiff contends that once Defendant installed cameras to record video of the premises, it undertook a duty to actively monitor the surveillance footage in real time. *Id.*

## II.   Legal Standard

"A court must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). The movant bears the initial burden of "informing the district court the basis of its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Id.* This initial burden is "regularly discharged with ease" and is satisfied "in either of two ways: [the movant] can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is "entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the

nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

## III.  Discussion

The parties agree that Missouri law governs, as the Court's jurisdiction over this matter is based on diversity of citizenship. *See Hodge ex rel. Farrow v. Walgreen Co.*, 37 F.4th 461, 464 (8th Cir. 2022) ("Because we are a federal court sitting in diversity, we apply the substantive law of the forum state." (quoting *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014))). In Missouri, "[t]he possessor of land owes to an invitee the duty of reasonable care to make the premises safe for that invitee, including warning the invitee of dangerous conditions he is unlikely to discover." *Lacy v. Wright*, 199 S.W.3d 780, 783 (Mo. Ct. App. 2006) (first citing *Bartel v. Cent. Mkts., Inc.*, 896 S.W.2d 746, 748 (Mo. Ct. App. 1995); and then citing *Bruner v. City of St. Louis*, 857 S.W.2d 329, 332 (Mo. Ct. App. 1993)). To make a submissible premises-liability case under Missouri law, an injured invitee must show that:

> (1) a dangerous condition existed on defendant's premises which involved an unreasonable risk; (2) the defendant knew or by using ordinary care should have known of the condition; (3) the defendant failed to use ordinary care in removing or warning of the danger; and (4) the plaintiff sustained injuries as a result of such condition.

*Steward v. Baywood Vills. Condo. Ass'n*, 134 S.W.3d 679, 682 (Mo. Ct. App. 2004) (first citing *Burns v. Frontier II Props., Ltd. P'ship*, 106 S.W.3d 1, 3 (Mo. Ct. App. 2000); and then citing *Emery v. Wal-Mart Stores*, 976 S.W.2d 439, 443–44 (Mo. banc 1998)).

"A store keeper is not liable to a business invitee for injury resulting from a dangerous or unsafe condition of the premises, absent evidence that the storekeeper had actual or constructive knowledge of the condition in time to have remedied the condition prior to the injury." *Elmore v. Wal-Mart Stores, Inc.*, 812 S.W.2d 178, 179–80 (Mo. Ct. App. 1991) (citing *Grant v. Nat'l Super Mkts., Inc.*, 611 S.W.2d 357, 359 (Mo. Ct. App. 1980)). "In order to establish constructive notice, the condition must have existed for a sufficient length of time or the facts must be such that the defendant should have reasonably known of its presence." *Id.* at 180 (citing *Vinson v. Nat'l Super Mkts., Inc.*, 621 S.W.2d 373, 375 (Mo. Ct. App. 1981)).

"[P]rior to the Missouri Supreme Court's decisions in *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778, 781 (Mo. banc 1989) and *Moss v. Nat'l Super Mkts., Inc.*, 781 S.W.2d 784 (Mo. banc 1989)," Missouri courts "placed great emphasis on the length of time the dangerous condition had been present and held that times of 20 or 30 minutes, absent proof of other circumstances, were insufficient to establish constructive notice as a matter of law," *Love v. Hardee's Food Sys., Inc.*, 16 S.W.3d 739, 742 (Mo. Ct. App. 2000) (first citing *Grant*, 611 S.W.2d at 359; and then citing *Carraway v. Nat'l Super Mkts., Inc.*, 741 S.W.2d 895, 896 (Mo. Ct. App. 1987)). In *Sheil*, the Missouri Supreme Court reduced the importance of time as a factor in cases involving self-service stores, stating that the more important factor in such cases is "the method of merchandising and the nature of the article causing the injury." 781 S.W.2d at 780–81 (considering the above factors and concluding that a box in a store aisle was "a dangerous, foreseeable condition, and the store had the duty to use due care to protect customers against dangers of this kind"). The court in *Moss* reaffirmed this change and went on to conclude that, on the record before it, the plaintiff there failed to put forth a submissible premises-liability case because she failed to introduce "evidence about the defendant's method

7

of operation," without which she could not show "constructive notice to the owner." 781 S.W.2d at 785–86. As the court would later summarize, "*Moss* stated that under *Sheil*, the durations of the existence of [dangerous conditions] 'may not be so important as they once were, especially if the evidence shows that employees of the store were regularly in the area in which the accident occurred.'" *Georgescu v. K Mart Corp.*, 813 S.W.2d 298, 302 (Mo. banc 1991) (quoting *Moss*, 781 S.W.2d at 785–86).

*Elmore v. Walmart Stores* provides a useful illustration of these principles. 812 S.W.2d at 178. There, the plaintiff slipped and fell on a partially opened package of breath mints on the floor of the fabric department in defendant's store. *Id.* at 179. Because the mints were not regularly merchandised in the fabric department, the Missouri Court of Appeals determined that the "foreseeability present in *Sheil* . . . c[ould ]not be said to be present" and that *Moss* was more "on point since the spill in *Moss*, though outside of the store, was not an item regularly merchandised by the store." *Id.* at 181–82 (citing *Moss*, 781 S.W.2d at 785). The appellate court stated that "[w]hile *Sheil* and *Moss* greatly contracted the role of time in determining whether constructive notice exists, they did not eliminate time as a factor," and in *Elmore*, the undisputed evidence showed that the area had been cleaned five minutes before the fall, and the mints were not observed at that time. *Id.* at 182. Because the mints had been on the ground for only five minutes and the article causing the fall was in an area where it was not regularly sold, the court held that the defendant could not, "as a matter of law, be found to have constructive notice of the existence of the dangerous condition." *Id.*

In *Gatley v. Wal-Mart Stores, Inc.*, the appellate court likewise determined that *Moss* controlled because the accident occurred outside the store, and it interpreted *Moss* as holding that, "at least as to [personal injuries] outside the store, it is necessary that the defendant have

8

some opportunity to observe the dangerous condition before the [injury] for which a plaintiff

seeks to hold it responsible."  16 S.W.3d 711, 714 (Mo. Ct. App. 2000).  The court concluded

that the defendant had "no liability for a condition which appeared suddenly before Plaintiff's

fall that it could either not reasonably be held to foresee or which its employees did not have

a reasonable opportunity to observe and correct."  *Id.* at 716.

> In addition, a possessor is not held liable for an injury caused by a defect in the premises of which he had no actual knowledge, even though it might have been revealed if he had made an investigation or inspection, unless the situation suggests an investigation and the facts are such as to indicate to a reasonably prudent [person] the likelihood of the existence of some hidden danger to persons lawfully on his property.

*Medows v. Brockmeier*, 863 S.W.2d 675, 676–77 (Mo. Ct. App. 1993) (alteration in original)

(citing *Asher v. Broadway-Valentine Ctr., Inc.*, 691 S.W.2d 478, 483 (Mo. Ct. App. 1985)).

Because the Court finds that Defendant has met its initial, far-from-stringent burden,

*see Bedford*, 880 F.3d at 996, Plaintiff must "come forward with specific facts showing there

is a genuine issue for trial" to survive Defendant's Motion.  *Atkinson v. City of Mt. View*, 709

F.3d 1201, 1207 (8th Cir. 2013).  More specifically, Plaintiff must raise a genuine issue of

material fact as to whether Defendant had constructive notice of the improperly-connected

breakaway device.

He has failed to do so.  The only evidence concerning Defendant's business practices

and how it monitors its fuel pumps is the deposition transcript of Defendant's corporate

representative, who testified that the gas station's video cameras are not monitored in real time,

there was no alarm or sensor on the subject pump or breakaway device to notify Defendant's

employees when the hose became disconnected from the pump, and Defendant is notified that

a hose has been disconnected from a pump only if an employee observes a disconnected hose

or a customer notifies an employee that a hose has been disconnected. *See* Doc. [28-1] at 6, 8; Doc. [29] ¶¶ 9, A. While there is record evidence indicating that hoses are regularly disconnected from the fuel pumps at Defendant's gas stations by customers who forget to remove nozzles from their vehicles before driving away, *see* Doc. [31] ¶ E, there is nothing in the record suggesting that customers attempt to reattach disconnected hoses themselves with any regularity. Thus, Plaintiff has not shown that the improperly-connected breakaway device was foreseeable to Defendant or that Defendant had constructive notice of its presence. *See Elmore*, 812 S.W.2d 181 (concluding that where "the breath mints involved were not regularly merchandised either partially opened nor in the fabric department[, t]he foreseeability present in *Sheil* regarding the box of motor oil c[ould ]not be said to be present").

Additionally, Plaintiff has presented no evidence showing that Defendant's employees had an opportunity to discover the improperly-connected breakaway device prior to the May 28, 2021, incident. *See Gatley*, 16 S.W.3d at 715 ("[A]t least outside the store, the defendant must have some reasonable opportunity to discover the condition."). Plaintiff admits that there was no visual indication the hose had been improperly connected to the subject pump, Doc. [29] ¶¶ 15, 17, and that when Defendant is notified that a hose has been disconnected, Defendant's employees are instructed to place a work order with facility support and wait for a technician to reattach the disconnected hose rather than attempting to reattach it themselves, Doc. [29] ¶¶ 10, A; *see also* Doc. [28-1] at 7 ("The store manager should not be reattaching the breakaway themselves. . . . [T]hey are not expected to mess with any mechanical or . . . electronic[] devices that they are not certified to repair."). Therefore, by Plaintiff's own admission, Defendant's employees could not have discovered the improperly-connected breakaway device, even if they had visually inspected the subject pump before Plaintiff

10

arrived. *See Gatley*, 16 S.W.3d at 716 (holding that defendant had "no liability for a condition which appeared suddenly before Plaintiff's fall that it could either not reasonably be held to foresee or which its employees did not have a reasonable opportunity to observe and correct"); *Medows*, 863 S.W.2d at 677 (concluding that the plaintiff failed to present a submissible case where "[t]he evidence did not establish either that defendant knew of the condition of the step or that the situation suggested that an investigation of the step was necessary"); *England v. Salamon*, 324 S.W.2d 765, 767 (Mo. Ct. App. 1959) ("[T]he landowner will not be held liable for hidden defects which would not have been discovered by a reasonably careful inspection.").

As for Plaintiff's assertion that when Defendant installed cameras to record video of the premises, Defendant undertook a duty to actively monitor the surveillance footage in real time, Plaintiff cites no Missouri authority for that proposition, and the Court has found no such authority. Plaintiff appears to be relying on *Combellick v. Rooks*, which states that "where 'one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed.'" 401 S.W.2d 460, 463 (Mo. 1966) (en banc) (quoting *Smith v. Kansas City Pub. Serv. Co.*, 43 S.W.2d 548, 553 (Mo. 1931) (en banc)). While "Missouri courts have consistently held that where a duty to look exists it is contributory negligence to fail to see what is plainly visible," *Fehlbaum v. Newhouse Broad. Corp.*, 483 S.W.2d 664, 665 (Mo. Ct. App. 1972) (citing *Combellick*, 401 S.W.2d at 463), they have also held that "[a] person . . . is not required to look for danger where there is no cause to anticipate it," *id.* (citation omitted), and the Court has already determined that Plaintiff has not shown that the improperly-connected breakaway device was foreseeable to Defendant. Further, *Combellick* is inapposite because that case involved a motor vehicle accident, not premises liability, and it

provides no support for Plaintiff's contention by installing video cameras on its premises, Defendant undertook a duty to constantly monitor the surveillance footage.

Accordingly, Plaintiff has not presented "a submissible case by showing that the [improperly-connected breakaway device] was either foreseeable to [Defendant] or that [Defendant] had constructive notice of its presence." *Gatley*, 16 S.W.3d at 716; *see also Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 934–35 (8th Cir. 2010) (applying Missouri law and concluding that plaintiff failed to show that defendant should have known of the allegedly dangerous condition where she presented no evidence of defendant's method of operation or evidence that defendant had received prior complaints about the condition).

## IV.    Conclusion

Plaintiff has failed to raise a genuine issue of material fact as to whether Defendant had constructive notice of the improperly-connected breakaway device. *See Celotex Corp.*, 477 U.S. at 323; *Gatley*, 16 S.W.3d at 716. As such, the Court will grant Defendant's Motion.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, Doc. [26], is **GRANTED**.

A separate Judgment will accompany this Memorandum and Order.

Dated this 22nd day of May 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE